IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02148-LTB-BNB

DARRELL FORTNER, and
JENNIFER FORTNER, d/b/a Diamond/Dundee Tree Service,

Plaintiffs,

v.

SARAH PELTON, in her individual capacity as an ATF agent,
ATF AGENTS DOG 1, CAT 2, AND HORSE 3 in their individual capacities,
THE CITY OF COLORADO SPRINGS,
MAYOR LIONEL RIVERA, individually and in his official capacity as Mayor of C/S,
KATHY YOUNG, individually and in her official capacity as City Clerk of C/S,
DARREL PEARSON, individually and in his official capacity as City Forrester of C/S,
JAMES A. CHOATE, in his individual capacity as Sergeant for El Paso County Sheriff's Office,
TERRY MAKETA, in his individual capacity as Sheriff of El Paso County, Colorado,
SHANE WHITE, individually and in his official capacity as Asst. City Attorney for the City of Colorado Springs, Co., and
JAMES E. MCGANNON, individually and in his official capacity as City Forrester for the City of Colorado Springs, CO,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on **Defendant Pelton's Partial Motion for Summary Judgment** [Doc. #220, filed 8/15/08] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED and that judgment enter in favor of defendant Pelton on all of the plaintiffs' claims against her.

## I. STANDARD OF REVIEW

The plaintiffs are proceeding *pro se*, and I must liberally construe their pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se*

litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  BACKGROUND

The plaintiffs filed their Second Amended Verified Complaint on April 26, 2007 [Doc. #52] (the "Complaint").  The Complaint contains the following allegations against Pelton:

1.  ATF agents Pelton and Dog 1 entered the plaintiffs' home and falsely arrested Mr. Fortner without a warrant and without probable cause.  Id. at ¶¶ 40, 43, 44.  Pelton and Dog 1 denied Mr. Fortner's request to call his attorney.  Id. at ¶ 45.  Pelton, Dog 1, Cat 2, and Horse 3 seized nine firearms, seven carrying cases, and four telescopes without a warrant.  Id. at ¶ 46. Pelton is guilty of false arrest, false imprisonment, and illegal search and seizure.  Id. at ¶ 36.

2.  Under threat of arrest, Pelton ordered Mr. Fortner to report to the El Paso County Sheriff's Department within twelve hours to register as a sex offender.  Id. at ¶ 52.

3.  Pelton called Ms. Fortner a Mexican and asked if she could speak English.  Id. at ¶ 58.

4.  Pelton, Dog 1, Cat 2, and Horse 3 illegally seized the plaintiffs' property.  Id. at ¶¶ 59-60.

5.  Pelton and Russell lied to the United States District Court judge in Case No. 06-cv-00281-LTB.  Pelton stated to the Court that Mr. Fortner was arrested and convicted in California for child molestation and that Mr. Fortner had a 9mm gun.  Id. at ¶¶ 99-103.

6.  Pelton stated that Bruce Millis told her that Mr. Fortner had guns and was a child molester.  Id. at ¶ 105.  Mr. Fortner told Pelton that Millis had pulled a gun on him and threatened him.  Id. at ¶ 106.  Pelton refused to investigate the matter.  Id. at ¶¶ 104, 106.

Throughout the Complaint, the plaintiffs list numerous statutory and constitutional provisions.  However, they do not specify which of the alleged actions and defendants violated which provision.  I construe the Complaint as alleging the following claims against defendant

Pelton:[1] Claim One alleges that Pelton falsely arrested the plaintiff without a warrant and without probable cause in violation of the Fourth Amendment. *Complaint*, ¶40. Claim One further alleges that in violation of the Fourth Amendment, Agent Pelton illegally entered the plaintiffs' home and seized firearms after Mr. Fortner told her she could not search the home without a warrant. Id. at ¶ 43. Claim Three alleges that Pelton discriminated against Ms. Fortner. Id. at ¶¶ 56,58. Claim Three further alleges that Pelton "illegally seized" his property. Id. at ¶¶ 59-60. Claim Four alleges that Pelton provided false testimony in a civil forfeiture case. *Complaint*, ¶¶ 99-107.

All common law torts alleged against Pelton have been dismissed with prejudice [Doc. #138], and all claims pursuant to 18 U.S.C. §§ 241 and 242 have been dismissed with prejudice as against all defendants [Doc. #141].

### III. UNDISPUTED MATERIAL FACTS[2]

1. Sarah Pelton has been an Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since June 1990. *Motion*, Ex. A-1, ¶ 1.

2. Agent Pelton's duties include the investigation of federal firearms violations. Id. at ¶ 2.

3. On February 17, 2006, Agent Pelton verified the truth of the following facts and information contained in a Verified Complaint for Forfeiture In Rem:

---

[1]To the extent the plaintiff attempts to bring claims other than the claims I have identified, those claims are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[2]The plaintiffs purport to dispute many of the defendant's facts, but they rarely provide any evidence to support their own version of the facts. I use only those facts which have been supported by competent evidence.

4

a. On October 6, 2005, an individual named Bruce Millis relinquished ownership of a Remington 870, 12 gauge shotgun with an obliterated serial number to the Bureau of Alcohol, Tobacco, and Firearms in Colorado Springs, Colorado.

b. Mills stated that approximately three months prior he was present at Darrell Fortner's residence in Colorado Springs, Colorado, and witnessed Fortner moving approximately 20 firearms from a Chevrolet truck into a Dodge motor home. Fornter gave Millis the Remington shotgun, a 9mm "Uzi-style" handgun, and a suppressor for Millis to sell.

c. Millis further stated that several weeks later, Fortner contacted Millis and requested that he bring the 9mm handgun to Fortner at a restaurant in Colorado Springs. Fortner stated that his brother in law had a buyer for the gun. Millis returned the handgun to Fortner. Id. at Attachment D, ¶¶ 4-6.

4. Millis signed a Notice of Abandonment of Property relinquishing all rights and claims to the Remington. Id. at Ex. A-1, ¶ 3 and Attachment A.

5. Following her conversation with Millis, Agent Pelton used a number of databases and determined Mr. Fortner's address. Id. at ¶ 5. In addition, On October 6, 2005, she conducted a National Crime Information Center (NCIC) inquiry on Mr. Fortner. According to the NCIC database, between 1967 and 2004, Mr. Fortner had been arrested for both felonies and misdemeanors in New Jersey, Florida, and California on charges including shoplifting, reckless driving, assault and battery, indecent exposure, and assault with intent to commit rape. Id. at ¶ 6. Finally, she contacted the California Department of Justice and was informed that in 1982, Mr. Fortner had been convicted in California of the felony offense of "annoy/molest a child" for which he was committed to a state mental hospital. She was further informed that in 1990, Mr.

Fortner was convicted of the felony of "annoy/molest a child" for which he was sentenced to five years probation and ninety days in jail.  Id. at ¶ 7.

6. After receiving the information from the California Department of Justice, she opened an ATF investigation of Mr. Fortner for unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and unlawful possession of a firearm by a person who has been committed to a mental institution in violation of 18 U.S.C. § 922(g)(4).  Id. at ¶ 8.

7. During the course of her investigation, Agent Pelton received additional information from the California Department of Justice that in 1981 Mr. Fortner was convicted in California on six felony counts of burglary in the 2nd degree and five misdemeaner offenses including two counts of petty theft, one count of child molestation, one count of maintaining a two-way mirror, and one count of obscene phone call.  He was sentenced to four years in California State Prison.  She also received further information about Mr. Fortner's 1982 conviction for "annoy/molest child."  She was informed that on July 9, 1982, Mr. Fortner was committed to a state mental hospital under the care of the California Department of Health, and on August 9, 1982, Mr. Fortner's commitment was re-affirmed and he was committed to Atascadero Hospital, a California State mental institution.  Id. at ¶ 9.

8. On October 12, 2005, Agent Pelton contacted the California Department of Justice and was told that Mr. Fortner was required to register as a sex offender in California.  Id. at ¶ 10. On the same day, she contacted the El Paso County Sheriff's Office and was told that, because Mr. Fortner was convicted of a felony sex offense in California, he was required to register as a sex offender in Colorado.  Agent Pelton was also informed that it was a felony offense for Mr. Fortner to fail to register as a sex offender in Colorado and that a felony arrest warrant would be

prepared based on his failure to register as a sex offender in violation of Colorado Revised Statutes § 18-3-412.5.  Id. at ¶ 11.

9.  On October 18, 2005, at approximately 4:30 p.m., Agent Pelton and Agent Marc Wood went to the plaintiff's address.  They met with Ms. Fortner, who stated that she was the wife of Darrell Fortner.  She indicated that Mr. Fortner was still at work.  Id. at ¶ 12; *Plaintiff's Response to Defendant Pelton's Motion for Summary Judgment* [Doc. #257] (the "Response"), Ex. 36, ¶ 5.

10.  Agents Pelton and Wood returned to the house at approximately 7:30 p.m.  Mr. Fortner arrived shortly thereafter.  *Motion*, Ex. A-1, ¶ 14; *Response*, Ex. 36, ¶¶ 7, 10.  Pelton and Wood approached him outside the residence and informed him that they had information that he gave or sold a firearm with an obliterated serial number to his former business partner, Bruce Millis.  Mr. Fortner denied that he had transferred a firearm to Millis and claimed that Millis had pulled a gun on him during a wage dispute.  *Motion*, Ex. A-1, ¶ 15; *Response*, Ex. 38, ¶ 6.

11.  Agent Pelton requested that Mr. Fortner give verbal consent to allow them to search for firearms in the motor home.  He gave verbal consent and opened the door.  Agents Pelton and Wood searched the interior of the motor home, but did not find any firearms.  *Motion*, Ex. A-1, ¶ 16; *Response*, Ex. 38, ¶ 7.

12.  Mr. Fortner advised Agent Pelton that he had four long guns in the house that he used for hunting.  At that point, based on her knowledge of his California felony conviction and commitment to a mental hospital, she believed that there was probable cause to seek a search warrant for the residence or to request that Mr. Fortner consent to a search of his residence.  Agent Pelton requested that Mr. Fortner give consent to search the residence for firearms, but he declined.  *Motion*, Ex. A-1, ¶ 17; *Response*, Ex. 38, ¶ 9.

13. Agent Pelton told Mr. Fortner that she had been informed by the El Paso County Sheriff's Office that he was required to register as a sex offender in Colorado and that he would be arrested for it. By this time, four additional law enforcement officers (two ATF agents, an ATF task force officer, and an El Paso County Deputy Sheriff) had arrived at the scene. *Motion*, Ex. A-1, ¶¶ 18-19; *Response*, Ex. 38, ¶ 8.

14. Mr. Fortner became highly agitated when he was told he would be arrested for failing to register as a sex offender. He was handcuffed at that time. Mr. Fortner did not resist being handcuffed and no physical force was necessary to place the handcuffs on him. *Motion*, Ex. A-1, ¶ 20.

15. After Mr. Fortner was handcuffed, Agents Pelton and Wood approached the residence and knocked on the door. Ms. Fortner answered the door, and Agent Pelton asked her if the agents could come inside. Agents Pelton and Wood went inside the residence. The two ATF agents, the task force officer, and the deputy sheriff remained outside with Mr. Fortner. Id. at ¶¶ 21-22; *Response*, Ex. 36, ¶ 10.

16. Inside the residence, Agent Pelton explained to Ms. Fortner that they were looking for firearms. Ms. Fortner acknowledged that there were approximately four hunting rifles in the residence. She claimed that two of the rifles belonged to her and the other two rifles belonged to Mr. Fortner. *Motion*, Ex. A-1, ¶ 23.

17. Agent Pelton asked Ms. Fortner for consent to search the premises for firearms, and she consented verbally and signed a written consent form. Id. at ¶ 24 and Attachment B.

18. While Agent Pelton interviewed Jennifer Fortner, Agent Wood and the ATF task force officer searched the residence for firearms. Id. at ¶ 23. At this time, Agent Pelton believed

that the law permitted a search of the residence based on the verbal and written consent from co-resident Ms. Fortner, even after Mr. Fortner declined to consent to the search. Id. at ¶ 27.

19. During the search of the residence, Agent Wood located eight firearms, seven of which were in storage-type rooms and one in the front room near the front door. All were readily accessible to any occupant. The firearms were seized as evidence and/or for forfeiture. Id. at ¶ 28.

20. Agent Pelton was inside the residence for approximately 60 to 90 minutes. At the time she left, Mr. Fortner was no longer in handcuffs. Id. at ¶ 29.

21. Mr. Fortner was advised that he would be allowed to report the next day to the El Paso County Sheriff's Office to register as a sex offender, but that an arrest warrant would likely issue if he failed to comply. Mr. Fortner agreed to report the next day. Id. at ¶ 31; *Response*, Ex. 36, ¶ 15.

22. Agent Pelton did not strike, hit, or use any force against Mr. Fortner. *Motion*, Ex. A-1, ¶ 33. She did not observe any other law enforcement officer strike, hit, or use force against Mr. Fortner. Id. at ¶ 34. Mr. Fortner did not complain of any pain or injury associated with being handcuffed while in Agent Pelton's presence, and Agent Pelton did not have any indication that Mr. Fortner was in any way injured while being handcuffed or that he was in any way injured during the brief period when he was handcuffed. Id. at ¶ 35.

24. Agent Pelton did not conspire with anyone to violate Mr. Fortner's constitutional rights. Id. at ¶ 36.

25. On December 27, 2008, a Gamo-Hunter pellet gun was returned to Mr. Fortner because it was determined that it was not a firearm within the meaning of the Gun Control Act. Id. at ¶ 37 and Attachment C.

26. Agent Pelton's only involvement in the civil judicial forfeiture case was to affirm the truth of the facts and information contained in the Verified Complaint for Forfeiture In Rem. Id. at ¶ 40. When she affirmed the Verified Complaint, she had a good faith belief that every statement of fact presented in the Verified Complaint was true and accurate. Id. at ¶41.

27. On October 30, 2006, Agent Pelton received notification from the United States Attorney's Office that the court had entered a Default Judgment and Final Order of Forfeiture. Agent Pelton understood this to mean that the civil forfeiture case was completed and that the firearms could be destroyed. Agent Pelton completed the "Process Receipt and Return" and indicated the disposition of the firearms as "firearms will be destroyed." Id. at ¶ 45.

## IV. ANALYSIS

Defendant Pelton asserts that she is entitled to qualified immunity on all of the plaintiffs' claims.

> Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. It is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct.

Ahmad v. Furlong, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).

This two-part burden is a heavy one, and it must be met before the defendant bears his initial burden on summary judgment:

> A summary judgment decision involving the defense of qualified immunity is reviewed "somewhat differently" from other summary judgment rulings. When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. A right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotations and citations omitted).

Here, the plaintiffs have not demonstrated with any clarity that Pelton's alleged actions violated a constitutional or statutory right. To the contrary, their Response is no more helpful than their Complaint in identifying which of the alleged actions violated which of the many constitutional and statutory provisions listed in the Complaint. Moreover, the plaintiffs have not shown that any constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. For these reasons alone, Pelton is entitled to qualified immunity and her Motion should be granted. In addition, the undisputed material facts establish that Agent Pelton is entitled to summary judgment.

### A. Warrantless Arrest

Claim One alleges that Pelton falsely arrested the plaintiff without a warrant and without probable cause. *Complaint*, ¶40. I note that there is a dispute about whether Pelton actually placed the plaintiff under arrest. *Motion*, Ex. A-1, ¶¶ 20, 30; *Response*, Ex. 38, ¶ 9. For

purposes of this Recommendation, I will assume the facts in favor of the plaintiffs and proceed on the assumption that Agent Pelton placed the plaintiff under arrest on October 18, 2005.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152,(2004). "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotations omitted) (quoting Draper v. United States, 358 U.S. 307, 313 (1959)).

> Probable cause is measured against an objective standard. Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive. Florida v. Royer, 460 U.S. 491, 507, 103 S.Ct. 1319, 75 L.Ed.2d 229; United States. v. Treto-Haro, 287 F.3d 1000, 1006 (10th Cir.2002). Thus, the primary concern is "whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002) (internal quotation marks and alterations omitted).

Id. at 896-97.

Under 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess any firearm. Under 18 U.S.C. § 922(g)(4), it is unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess any firearm.

It is undisputed that (1) Agent Pelton received a firearm with an obliterated serial number from Mr. Millis; (2) Millis told her he had received it and a handgun from Mr. Fortner to sell; (3)

12

Millis told her he had seen Mr. Fortner in possession of approximately 20 firearms; (4) Mr. Fortner told Agent Pelton he had guns in the house; and (5) Agent Pelton was informed by the California Department of Justice that (a) in 1981, Mr. Fortner was convicted in California on six felony counts of burglary in the 2nd degree and five misdemeaner offenses and was sentenced to four years in California State Prison, (b) in 1982, Mr. Fortner was convicted in California of the felony offense of "annoy/molest a child" for which he was committed to a state mental hospital, and (c) in 1990, Mr. Fortner was convicted of the felony of "annoy/molest a child" for which he was sentenced to five years probation and ninety days in jail.

Armed with this information, a reasonable officer would have believed that probable cause existed to arrest Mr. Fortner for violation of 18 U.S.C. § 922(g)(1) and/or 18 U.S.C. § 922(g)(4). Thus, even if Agent Pelton placed Mr. Fortner under arrest, her actions were not unconstitutional.

### B. Search of Home

Claim One alleges that on October 18, 2005, Agent Pelton illegally entered the plaintiffs' home and seized firearms after Mr. Fortner told her she could not search the home without a warrant. *Complaint*, ¶43.

On March 22, 2006, the Supreme Court in Georgia v. Randolph, 547 U.S. 103 (2006), held that the Fourth Amendment forbids a warrantless search of a shared dwelling for evidence over a physically-present resident's express objection, notwithstanding a co-tenant's consent to search. In doing so, however, the Court noted that "[a]ll four Courts of Appeals to have considered this question have concluded that consent remains effective in the face of an express objection. See United States v. Morning, 64 F.3d 531, 533-536 (C.A.9 1995); United States v.

Donlin, 982 F.2d 31, 33 (C.A.1 1992); United States v. Hendrix, 595 F.2d 883, 885 (C.A.D.C.1979) (per curiam); United States v. Sumlin, 567 F.2d 684, 687-688 (C.A.6 1977)."

Thus, on October 18, 2005, it was not a clearly established Fourth Amendment violation for Agent Pelton to search the house if a co-tenant consented to the search. To the contrary, all four circuit courts that had addressed the issue prior to the Randolph decision had determined this type of search to be reasonable.

The undisputed evidence establishes that after Mr. Fortner refused consent to search his residence, Ms. Fortner consented verbally and signed a written consent form. *Motion*, Ex. A-1, ¶ 24 and Attachment B; *Response*, Ex. 36, ¶¶ 10-14. Therefore, at the time Agent Pelton conducted her search of the Fortners' residence, she did not violate any clearly established Fourth Amendment rights.

### C. Discrimination

Claim Three alleges that Pelton discriminated against Ms. Fortner. *Complaint*, ¶¶ 56,58. Ms. Fortner attests that when Agent Pelton appeared at her front door on October 18, 2005, Pelton stated, "Oh, your [sic] a Mexican, do you speak English?" *Response*, Ex. 36, ¶ 3. Ms. Fortner further attests that when Agent Pelton returned to her home later that evening, "Agent Pelton ask [sic] me if I could read and write English. I felt as though she was calling me a Mexican again." Id. at ¶ 12.

The plaintiffs do not specify which constitutional or statutory provisions form the basis of this claim. Nevertheless, these allegations are insufficient to constitute discrimination under any authority.

### D. Property Loss and False Statement

Claim Three alleges that Pelton "illegally seized" Mr. Fortner's property. *Complaint*, ¶¶ 59-60. The plaintiffs have not made any coherent argument, nor have they produced any evidence to show that the Pelton illegally seized any of their property. To the contrary, the undisputed evidence establishes that Agent Pelton entered the Fortners' residence with consent while another agent seized the firearms. The evidence further establishes that Agent Pelton had probable cause to believe that the firearms were evidence of a violation of federal firearms statutes.

Claim Four alleges that Pelton provided false testimony in a civil forfeiture case, *Complaint*, ¶¶ 99-107, in violation of the plaintiffs' constitutional rights. Id. at ¶ 61. Agent Pelton attests that, at the time she affirmed the Verified Complaint for Forfeiture In Rem, she did so with the good faith belief that every statement of fact presented in the Verified Complaint was true and accurate. *Motion*, Ex. A-1, ¶ 41. The Fortners do not provide any evidence to the contrary. Although they repeatedly dispute the veracity of the information Millis provided to Agent Pelton, they do not dispute that Millis provided Pelton with the information, nor do they provide any evidence to show that Pelton knew the information was false.[3]

### IV. CONCLUSION

I respectfully RECOMMEND that Defendant Pelton's Partial Motion for Summary Judgment be GRANTED and that judgment enter in favor of defendant Pelton on all of the plaintiffs' claims against her.

---

[3]In addition, to the extent the Fortners are attempting to challenge the forfeiture of the firearms, such challenges must be made in the forfeiture proceeding pursuant to 18 U.S.C. § 983(a) and Fed. R. Civ. P., Supp. R. C(6). The Fortners may not challenge the forfeiture in this action.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 9, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge