IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02148-BNB-MEH

DARRELL FORTNER, and
JENNIFER FORTNER, d/b/a Diamond/Dundee Tree Service,

Plaintiffs,

v.

THE CITY OF COLORADO SPRINGS,
MAYOR LIONEL RIVERA, individually and in his official capacity as Mayor of C/S,
KATHY YOUNG, individually and in her official capacity as City Clerk of C/S,
DARREL PEARSON, individually and in his official capacity as City Forrester of C/S,
JAMES A. CHOATE, in his individual capacity as Sergeant for El Paso County Sheriff's Office,
TERRY MAKETA, in his individual capacity as Sheriff of El Paso County, Colorado,
SHANE WHITE, in his official capacity as Asst. City Attorney for the City of Colorado Springs,
Co., and
JAMES E. MCGANNON, individually and in his official capacity as City Forrester for the City
of Colorado Springs, CO,

Defendants.

_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

_____

On May 2, 2012, I held an evidentiary hearing on the issue of whether the plaintiffs filed

with the County defendants a written notice of their state law tort claims as required by the

Colorado Governmental Immunity Act ("CGIA").  I find that they did not, and the state law tort

claims are dismissed for lack of subject matter jurisdiction.[1]

---

[1]     The notice issue was raised in the County Defendants' Supplemental Motion for
Summary Judgment or Motion to Dismiss [Doc. #322] (the "Supplemental Motion for Summary
Judgment").

## I.  SOVEREIGN IMMUNITY: COUNTY OF EL PASO

During the hearing on May 2, the defendants advised me that the court had not addressed an additional sovereign immunity issue raised in their Supplemental Motion for Summary Judgment.  Specifically, the defendants argued that the plaintiffs' state law tort claims are barred by section 24-10-106(1), C.R.S. (2006).  That argument, not fully developed, was contained in one paragraph.  Because the argument implicates the court's subject matter jurisdiction over the County of El Paso, I address it now.  Tafoya v. United States Department of Justice, 748 F.2d 1389, 1390 (10th Cir.1984) (stating that "[i]nsofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings").

In Claim Two, the plaintiffs allege that defendants Maketa and Choate forced Mr. Fortner to register as a sex offender and posted his name and the name of his business on the internet, identifying him as a registered sex offender.  *Second Amended Verified Complaint* [Doc. #52] (the "Complaint"), p. 14.  The plaintiffs assert that the defendants' actions constitute the state law torts of intentional infliction of emotional distress, negligence, and "ruined reputation and shame."[2]  Id. at p. 13.  Claim Two is brought against the County of El Paso, Maketa, and Choate (the "County Defendants").[3]

---

[2]Damages from harm to the plaintiff's professional reputation and ability to earn a living, pain and suffering, and destruction of the value of his professional education are injuries within the meaning of the CGIA.  Therefore, the plaintiffs' claim for "ruined reputation and shame" is subject to the notice provisions of the CGIA.  State Personnel Bd. v. Lloyd, 752 P.2d 559, 565 (Colo. 1988).

[3]According to the court's docket sheet, the County of El Paso was terminated as a party on February 12, 2008.  However, the record does not contain an order dismissing the County of El Paso.

Section 24-10-106(1), C.R.S., addresses the sovereign immunity of a public entity and

provides:

> (1) A **public entity** shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
>> (a) The operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment, except emergency vehicles operating within the provisions of section 42-4-108(2) and (3), C.R.S.;
>>
>> (b) The operation of any public hospital, correctional facility, as defined in section 17-1-102, C.R.S., or jail by such public entity;
>>
>> (c) A dangerous condition of any public building;
>>
>> (d)(I) A dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway, road, street, or sidewalk within the corporate limits of any municipality, or of any highway which is a part of the federal interstate highway system or the federal primary highway system, or of any highway which is a part of the federal secondary highway system, or of any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon. As used in this section, the phrase "physically interferes with the movement of traffic" shall not include traffic signs, signals, or markings, or the lack thereof. Nothing in this subparagraph (I) shall preclude a particular dangerous accumulation of snow, ice, sand, or gravel from being found to constitute a dangerous condition in the surface of a

public roadway when the entity fails to use existing means available to it for removal or mitigation of such accumulation and when the public entity had actual notice through the proper public official responsible for the roadway and had a reasonable time to act.

(II) A dangerous condition caused by the failure to realign a stop sign or yield sign which was turned, without authorization of the public entity, in a manner which reassigned the right-of-way upon intersecting public highways, roads, or streets, or the failure to repair a traffic control signal on which conflicting directions are displayed;

(III) A dangerous condition caused by an accumulation of snow and ice which physically interferes with public access on walks leading to a public building open for public business when a public entity fails to use existing means available to it for removal or mitigation of such accumulation and when the public entity had actual notice of such condition and a reasonable time to act.

(e) A dangerous condition of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility. Nothing in this paragraph (e) or in paragraph (d) of this subsection (1) shall be construed to prevent a public entity from asserting sovereign immunity for an injury caused by the natural condition of any unimproved property, whether or not such property is located in a park or recreation area or on a highway, road, or street right-of-way.

(f) The operation and maintenance of any public water facility, gas facility, sanitation facility, electrical facility, power facility, or swimming facility by such public entity;

(g) The operation and maintenance of a qualified state capital asset that is the subject of a leveraged

> leasing agreement pursuant to the provisions of part
> 10 of article 82 of this title;
>
> (h) Failure to perform an education employment
> required background check as described in section
> 13-80-103.9, C.R.S.

Section 24-10-106(1), C.R.S. (2006) (emphasis added).

The CGIA defines "public entity" as follows:

> "Public entity" means the state, county, city and county,
> municipality, school district, special improvement district, and
> every other kind of district, agency, instrumentality, or political
> subdivision thereof organized pursuant to law and any separate
> entity created by intergovernmental contract or cooperation only
> between or among the state, county, city and county, municipality,
> school district, special improvement district, and every other kind
> of district, agency, instrumentality, or political subdivision thereof.

Section 24-10-103(5), C.R.S. (2006).

The tort claims asserted against the County of El Paso are barred by section 24-10-106(1)

because the plaintiffs' alleged injuries did not result from any of the exceptions to immunity.

The state law tort claims are the only remaining claims against the County of El Paso.

Therefore, the County is dismissed as a defendant.

Section 24-10-106(1) does not address the immunity of public employees; it addresses

immunity only as to public entities. Therefore, the claims against Maketa and Choate are not

barred by section 24-10-106(1).

Actions against public employees are governed by section 24-10-118. Maketa and

Choate have not asserted any defense pursuant to section 24-10-118, and I need not address

immunity under that section because I find that the plaintiffs failed to serve the notice required

by the CGIA pursuant to section 24-10-109(1).

5

## II.  SOVEREIGN IMMUNITY: MAKETA AND CHOATE

Section 24-10-109(1) requires:

> Any person claiming to have suffered an injury by a public entity
> or by an employee thereof while in the course of such employment,
> whether or not by a willful and wanton act or omission, shall file a
> written notice as provided in this section within one hundred and
> eighty days after the date of discovery of the injury, regardless of
> whether the person then knew all the elements of a claim or a
> cause of action for such injury.  Compliance with the provisions of
> this section shall be a jurisdictional prerequisite to any action
> brought under the provisions of this article, and failure of
> compliance shall forever bar any such action.

Compliance with the notice provision implicates the court's subject matter jurisdiction.

Section 24-10-109(1), C.R.S.; City and County of Denver v. Crandall, 161 P.3d 627, 634 (Colo.

2007) (stating that "[t]he CGIA notice of claim provision is both a condition precedent and a

jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply

with it is an absolute bar to suit").  See also Trinity Broadcasting of Denver, Inc., v. City of

Westminster, 848 P.2d 916, 924 (Colo. 1993).  The burden is on the plaintiffs to prove

"jurisdictional facts adequate to support subject matter jurisdiction."  Crandall, 161 P.3d at 632.

"Unlike under ordinary statutes of limitations, a plaintiff cannot invoke equitable defenses such

as waiver, tolling, or estoppel to overcome the CGIA 180–day notice of claim provision."  "If a

claimant fails to comply, a court must dismiss the matter for lack of subject matter jurisdiction."

Id. at 633.

If personal service is not "timely perfected," the plaintiff has not met the jurisdictional

prerequisites.  Regional Transp. Dist. v. Lopez, 916 P.2d 1187, 1191 (Colo. 1996) (overruling a

previous case which had applied a "substantial compliance" standard to the 180 day service

requirement).

Service of the notice must be made in compliance with section 24-10-109(3), which provides:

> If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity. Such notice shall be effective upon mailing by registered or certified mail, return receipt requested, or upon personal service.

The County of El Paso is a public entity.  Its governing body is the El Paso County Board of Commissioners.  C.R.S. § 30-11-103 (2006).  The County Attorney represents El Paso County through its Board of County Commissioners.  The designated agent for service of process on El Paso County is "the county clerk, chief deputy, or county commissioner."  Colo. R. Civ. P. (4)(e)(7).

Although the Colorado Supreme Court has made clear that compliance with the 180 day notice requirement is jurisdictional, compliance with section 24-10-109(3) need only be substantial.  Finnie v. Jefferson County School Dist. R-1, 79 P.3d 1253 (Colo. 2003).  "[C]ase-by-case determinations of compliance, which consider principles of agency and equity, the purposes of the statute, and concerns of protecting plaintiffs from misrepresentations by governmental entities, are required."  Id. at 1258.

"If the motion is a factual attack on the jurisdictional allegations of the complaint, such as the timeliness of the notice involved in this case, the trial court may receive any competent evidence pertaining to the motion."  Trinity, 848 P.2d at 924; Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  The court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Trinity, 848 P.2d at 924.  The trial court must

"definitively resolve all issues of immunity before trial, regardless of whether the issues have been classified as jurisdictional" or as requiring substantial compliance.  Finnie, 79 P.3d at 1258. The plaintiff bears the burden of demonstrating that notice was properly filed.  Id. at 1261.

The issue of whether the Fortners provided the notice required by the CGIA to the County Defendants is hotly contested.  Witnesses for the County testified that notice was not provided at any time to any individual or County department.  Mr. Fortner and his brother-in-law, Phillip Ludwig, testified that Mr. Ludwig left a notice of claim with the El Paso County Risk Management Department and that Mr. Fortner left a notice of claim with the County Attorney, the office of the Board of County Commissioners, and on the desk of an unidentified county commissioner.

## A.  Service on the Risk Management Department

Mr. Ludwig is Jennifer Fortner's brother.  Mr. Fortner conducted the direct examination of Mr. Ludwig at the May 2 hearing.  In response to Mr. Fortner's leading questions, Mr. Ludwig testified that on March 6, 2006, while accompanied by Mr. Fortner, he placed a written notice of the Fortners' tort claims on the desk of an unidentified, middle-aged woman at the El Paso County Risk Management Department office at 105 East Vermijo.  Ex. P8,[4] Doc. #128, pp. 15-17; *Transcript of Hearing on May 2, 2012* (the "Transcript"), 18:9-19:13; 33:19-34:1.  Mr. Ludwig testified that he did not ask the woman to identify her position with the Risk Management Department, nor did he ask whether she was authorized to accept service on behalf

---

[4]The plaintiffs submitted a notebook of exhibits.  The notebook contains tabs that identify exhibits P1 through P18.  The exhibits are placed in front (rather than behind) the tabs.  For example, Exhibit P8 is found behind the tab labeled P7 and in front of the tab labeled P8.

of the County.  The woman did not have an opportunity to pick up the document or review it

before Mr. Ludwig left the office.  *Transcript*, 33:19-34:11.

Mr. Ludwig signed and dated a "Proof of Personal Service," which is written in Mr.

Fortner's handwriting and states:

> On March 6, 2006, I served personally the attached Notice copy of
> claim upon the Elpaso County risk management at 105 E Vermijo,
> 2nd Floor, Colo. Springs Co., at 11:00 AM.
>
> I'm over 18 years of age.  I'm not a party to this action.  I am a
> citizen of the United States, a resident of Elpaso County, Colo.
> Springs, CO.
>
> I declare under penalty of perjury under the laws of the state of
> Colo. that the foregoing is true and correct.
>
> Dated: March 6, 2006.

Exhibit P8, Doc. #128, p. 17.

In addition, Mr. Ludwig signed two separate affidavits (also in Mr. Fortner's

handwriting) confirming that he served the notice on the Risk Management Department at 105

East Vermijo on March 6, 2006.  Those affidavits were signed on February 4 and 25, 2008,

respectively.  *Transcript*, 19:17-20:3; 32:18-22; Ex. P-8, Doc. #128, pp. 8-20; Plaintiff's Ex. #6.[5]

The first affidavit was submitted in connection with the Plaintiffs' Objection [Doc. #128] to my

Recommendation [Doc. #116] addressing the defendants' Supplemental Motion for Summary

Judgment.[6]  It was submitted after the defendants filed their objections [Doc. #121] to the same

---

[5]Plaintiffs' Exhibit #6 should not to be confused with the plaintiffs' exhibit P-6.
Plaintiffs' Exhibit #6 was not contained in the plaintiffs' exhibit notebook.  It was offered and
accepted into evidence as a separate exhibit.  *Transcript*, pp. 20:25-22:4.

[6]The second affidavit was created because Mr. Fortner lost the original of the first
affidavit.  *Transcript*, 156:1-5.

Recommendation.  The defendants' objections contained affidavits from the Acting County

Attorney and an employee of the County Clerk and Recorder stating that a written notice of

claim had not been submitted by the Fortners.

 Robert Demetry was a claims investigator for the El Paso County Risk Management

Department from 2005 to 2010.  Id. at 137:1; 140:23-24.  Mr. Demetry investigated claims

brought by or asserted against the county regarding property and vehicle damage.  Id. at 142:1-

12.  Mr. Demetry testified that the Risk Management Department is not involved in claims

asserted in civil lawsuits against the county unless the County Attorney requests its involvement.

Id. at 142:13-18.  Rather, the policy of the Risk Management Department is to not accept notices

of claim of intent to sue.  Id. at 137:12.  If an individual attempted to serve him with a notice of

claim, Mr. Demetry's practice was to send the individual to the County Attorney's Office.  Id. at

137:10-19.  If an individual came to the Risk Management Department office and dropped off a

notice of claim of intent to sue, and nobody had an opportunity to direct the individual to the

correct office, the Risk Management Department ordinarily would deliver the notice to the

County Attorney's office.  Id. at 144:25-145:9.  Mr. Demetry testified that he did not receive a

notice of claim from the Fortners.  Id. at 139:3-14; 145:15-19.

Mr. Demetry also testified that the Risk Management Department was located at 27 East

Vermijo (not 105 East Vermijo) from 2005 until late 2009-2010.  Id. at 144:1-11; 146:16-19.  He

stated that any testimony that the Risk Management Office was located at 105 East Vermijo in

March 2006 was incorrect.  Id. at 144:20-24.

Based on the testimony and evidence presented at the hearing, I find that the Fortners did

not attempt service on the Risk Management Department.  I find also that if a notice of claim had

been left on an assistant's desk, the Risk Management Department would have caused the notice

to be delivered to the County Attorney's Office.  As discussed below, none of the notices alleged

by the Fortners to have been served were received by the County Attorney's Office.  Mr.

Demetry is a disinterested witness, and I credit his testimony.  Conversely, the testimony of

Messrs. Fortner and Ludwig was not plausible in view of their insistence that they served the

notice of claim on the Risk Management Department at 105 East Vermijo, an address it did not

occupy at the time of the alleged service.

Even if I were to find the Fortners' version of the facts as true, service on the Risk

Management Department does not constitute substantial compliance with section 24-10-109(3).

The Risk Management Department is not the governing body of El Paso County, nor is it the

attorney that represents the County.  Moreover, it is not one of the designated agents for service

of process on El Paso County.  Mr. Ludwig testified that he placed the notice on the desk of an

unidentified individual; did not ask her to identify her position; did not ask whether she was

authorized to accept service on behalf of the County; and left before she had an opportunity to

pick up the document.  In my view, substantial compliance would require at least an inquiry of

the individual attempted to be served with the notice of claim.

There is no evidence that the Fortners made an inquiry regarding who they should serve,

nor is there any competent evidence that anyone from the County misrepresented to the Fortners

the manner by which the notice of claim should be served.  Under the facts presented here, I find

that the plaintiffs did not meet their burden to show substantial compliance with section 24-10-

109(3) by their alleged service on the Risk Management Department.

11

### B.  Service on the Board of County Commissioners
### and the El Paso County Attorney's Office

Messrs. Fortner and Ludwig also testified that on March 6, 2006, Mr. Fortner

(1) personally served Becky Chumbler at the office of the Board of County Commissioners;

(2) placed a copy of the notice of claim on the desk of an unidentified County Commissioner

who was not present in the office; and (3) placed a copy of the notice of claim on the desk of the

receptionist for the County Attorney who was not present at her desk.[7]  Id. at 22:14-24:15;

151:9-18.

Becky Chumbler testified that on March 6, 2006, she was an administrative assistant to

the Board of County Commissioners.  Id. at 40:1-11.  Ms. Chumbler started working for the

Board of County Commissioners on February 15, 2006, and worked there for five years.  Id. at

44:2-6.  She also testified that she did not receive a notice of claim from the Fortners; she was

not authorized to accept service of a notice of claim and would not have accepted a notice of

claim from anyone; if someone attempted to hand her a notice of claim, she would have directed

them to serve it across the hall at the County Attorney's Office; if someone insisted on serving

her with a notice of claim, she would walk across the hall and get someone from the County

Attorney's Office; and if it was left on her desk, she would deliver it to the County Attorney's

Office.  Id. at 40:12-41:5; 48:9-14.

Mr. Fortner attempted to discredit Ms. Chumbler, implying that she is a liar and a thief.

Id. at 42:16-45:10.  Mr. Fortner's implications were inappropriate and unsupported by any

---

[7]The Fortners did not present evidence that they served the Chief Deputy, and they
concede they did not serve the County Clerk.  Id. at 4:10-12.

12

evidence.  I find that Ms. Chumbler's testimony was credible and that Mr. Fortner did not deliver a notice of claim to her or leave one on the desk of a County Commissioner.

Norma DeHerrera testified that in March 2006 she was employed as a receptionist at the El Paso County Attorney's Office.  Id. at 66:6-12.  She also testified that she summons an assistant county attorney to receive a notice of claim when one is brought into the office. Ordinarily, after service the county attorney gives the notice to Ms. DeHerrera to be date-stamped and entered on a data sheet.  Id. at 70:8-21; 79:1-80:16.  If a notice of claim is left on her desk while she is not present, Ms. DeHerrera summons an assistant county attorney to receive the notice, then enters the notice on the data sheet.  Id. at 80:17-81:48; 85:3-14.  Ms. DeHerrera does not have any record indicating that the County Attorney's Office received a notice of claim from the Fortners in March 2006.  Id. at 85:15-18.

Mr. Fortner attempted to discredit Ms. DeHerrera by implying that she would lie for the County.  Mr. Fortner's implications were inappropriate and unsupported.  Id. at 76:22-77:14.  I find that Ms. DeHerrera's testimony is credible and that the County Attorney's Office did not receive a notice of claim from the Fortners in March 2006.

Mr. Fortner also called his wife, Jennifer, as a witness.  Mr. Fortner attempted to establish through his wife's testimony that Assistant County Attorney Andrew Gorgey admitted during a telephone conversation that he had received the Fortner's notice of claim.  Id. at 94:10-24. Mr. Fortner also attempted to establish that he and Mrs. Fortner met with Mr. Gorgey and that Mr. Gorgey stated that he had the notice of claim with him.  Id. at 95:13-25.

Mr. Fortner coached his wife on direct examination by asking detailed leading questions, and he attempted to nonverbally coach her during her cross examination.  Although she

answered affirmatively to most of Mr. Fortner's leading questions, she appeared confused on cross examination.  For example, in response to a leading question on direct examination, Mrs. Fortner recalled a telephone conversation between Messrs. Fortner and Gorgey regarding the notice of claim that occurred six to eight months after this suit was filed.  Id. at 94:10-24.  On cross examination, however, Mrs. Fortner was uncertain whether this lawsuit had been filed at the time of that telephone conversation, and she answered affirmatively only after she observed Mr. Fortner nodding his head.  Id. at 96:16:20.  Moreover, she did not know what a notice of claim is, and she did not know the difference between a complaint in a federal lawsuit and a notice of claim.  I find Mrs. Fortner's testimony to be incredible, and I do not rely on any of it to resolve the notice issue.

Mr. Gorgey testified that he did not have a notice of claim at the meeting with the Fortners and that he never received a notice of claim from them.  Id. at 111:2-14.  In response to a question by Mr. Fortner, Mr. Gorgey testified that "the only thing I've ever talked to you about [concerning the notice of claim] is that you didn't file it."  Id. at 111:24-25.  Mr. Gorgey also testified that "the only time these documents, both the proof of claim and the affidavit of proof of service, ever showed up is after the county pointed out that you hadn't filed them."  Id. at 111:25-112:3.  See also id. at 122:2-15.

Mr. Gorgey also testified that he deposed Mr. and Mrs. Fortner on April 15, 2008, shortly after Mr. Fortner submitted to the court the notice of claim allegedly served by Mr. Ludwig.  Id. at 117:12-14.  In his deposition, Mr. Fortner testified that Mr. Ludwig served the notice of claim on the Risk Management Department only, and on no one else.  Ex. P12, Doc. #322-4, 102:21-103:6.  Mr. Gorgey specifically asked Mr. Fortner during his deposition whether Mr. Ludwig

14

served the notice on the County Attorney or the Clerk and Recorder, and Mr. Fortner testified that he did not think so.  Id. at 103:7-23.  Mr. Fortner failed to indicate during his deposition that *he* (as opposed to Mr. Ludwig) had attempted to personally serve the Board of County Commissioners or the County Attorney; failed to indicate that Mr. Ludwig was with him when he attempted to serve the Board of County Commissioners and the County Attorney; and failed to indicate that he was with Mr. Ludwig when Mr. Ludwig left the notice with the Risk Management Department.  *Transcript*, 125:18-126:16.

I find Mr. Gorgey's testimony credible.  I also find that Mr. Gorgey was never served with a notice of claim by the Fortners, and never indicated that the County defendants had been served with such a notice.

Mr. Fortner argued that El Paso County "won't accept their notice of claim unless you just leave it with them.  They won't take it.  And they'll try every loophole they can to get out of that service so they can avoid a proper lawsuit."  Id. at 161:12-15.

Mr. Fortner unsuccessfully attempted to prove that Ms. Chumbler improperly told him to serve the notice of claim on the Risk Management Department.  He played a tape recording at the May 2 hearing of a portion of a conversation between himself and Ms. Chumbler, as follows:

> Can I help you?
>
> Good morning.  I was in the other day and you gave me a name to call somebody and I misplaced that name.  Risk management.
>
> Oh (inaudible).

Id. at 61:25-62:5.

When Mr. Fortner asked Ms. Chumbler about the recording, she said that defendants' counsel had played it for her prior to the hearing and that it was difficult to understand.  She

recognized her voice on the recording, however; understood a part of the recording where Mr.

Fortner asked her how long she had worked for the Board of Commissioners; and replied almost

four years.  Id. at 48:15-49:4.  She also recognized that Mr. Fortner stated in the recording that

the date was December 21st.  Id. at 49:7-8.  Ms. Chumbler stated that because her four-year

anniversary was on February 15, 2010, the recording must have been made on December 21,

2009.  Id. at 57:10-15.

      Rather than proving that Ms. Chumbler improperly directed Mr. Fortner in March 2006

to serve his notice of claim on the Risk Management Department, the recording establishes only

that Mr. Fortner tape recorded a conversation between himself and Ms. Chumbler in 2009.  In

addition, because Mr. Fortner did not play the entire recording, it is impossible to discern the

proper context of the conversation.  Id. at 62:6-63:3.

      Mr. Fortner also attempted to show that Mr. Demetry purposely misled him regarding

where Mr. Fortner should serve the notice of claim.  Mr. Fortner tape recorded a conversation

with Mr. Demetry sometime after Mr. Ludwig allegedly served the Risk Management

Department.  Id. at 135:12-14; 143:22-25.  Mr. Fortner played portions of the recording.  The

first portion of the recording contains the following:

      Bob Demetry.

      (Inaudible) right here.

      Is that -- would that be in risk management?

      Uh-huh.

      That's where I turn in the claim?

      Yes.

Id. at 137:23138:3.

       The second portion of the recording states:

> (Inaudible) let's see here.  I don't know where to go.  (Inaudible) downtown this morning.  I called someone last -- night when that happened and they said they'd get back to me.  Well, if -- and I don't remember who I called.
>
> Yeah, that's -- let's see.  That's going to be -- I don't turn a claim in to the county attorney?
>
> No.
>
> Is that -- you guys turn that in to them, don't you?
>
> Yes.  They're the ones that --

Id. at 139:18-140:6.

       The third portion of the recording states:

> (Inaudible) paperwork and (inaudible) wouldn't do him any good.  I mean he could file a notice of claim himself but it's going to cost him probably more in the long run to get all the paperwork and (inaudible).  Where would that notice of claim go?
>
> Go to the El Paso County Sheriff's office.
>
> Oh, to the sheriff --

Id. at 141:2-9.

       Mr. Fortner did not play the entire recording, and the context of the conversation is not clear.  On cross-examination, Mr. Demetry testified that in the first part of the recording, he thought Mr. Fortner was inquiring about a claim against the County for property damage.  Id. at 143:6-11.  He further testified that during the last part of the recording, he thought Mr. Fortner was talking about a notice of claim.  Id. at 143:12-17.  Because the recording of Mr. Demetry was made after March 6, 2006, it does not support an argument that Mr. Demetry purposely

attempted to mislead the plaintiffs on March 6, 2006, about service of their notice of claim. Indeed, there is no evidence that Mr. Demetry was present when Mr. Ludwig allegedly placed the notice of claim on the desk of the unidentified, middle-aged woman on March 6, 2006.

Mr. Fortner also attempted to show that El Paso County employees falsify documents in order to avoid receiving notices of claim. Id. at 104:2-110:6. Mr. Fortner scanned an original document issued by the former Clerk and Recorder of El Paso County, which authorized several employees of the Clerk's Office to receive notices of claim. Mr. Fortner then added Mr. Demetry's name to the list of authorized employees. Mr. Fortner claimed that because he could easily alter the document, the County "take[s] off names and they put on names at will." Id. at 110:3-5. Mr. Fortner did not produce any evidence to show that County employees falsified any documents, however, and his unsupported accusations against the County were inappropriate.

The Fortners bear the burden of proving that they filed a timely notice of claim with the County. In an attempt to meet this burden, the Fortners argued that the County employees conspired to prevent them from filing their notice. The Fortners' argument is unconvincing and unsupported. There is no evidence that the various County departments were in collusion with each other to stop the Fortners from filing a notice of claim.

The Fortners and Mr. Ludwig testified in a manner directly contrary to the testimony of the County employees. The county employees who testified are not defendants in this case and have nothing to gain by lying. The Fortners, however, have a motive to lie. They are struggling to preserve their state law tort claims against the County defendants. And, although Mr. Ludwig is not a party to this case, he has been a partner in Mr. Fortner's tree business; has been a co-plaintiff with Mr. Fortner in prior lawsuits; and is a family member.

18

The timing of the Fortners' evidence regarding service of the notice is suspicious and weighs heavily against them. The Fortners first submitted evidence on February 6, 2008 [Doc. # 128], of service of a notice of claim on the Risk Management Department, only after the defendants had filed affidavits by county employees stating that the Fortners had not served a notice of claim on the County [Doc. #121]. The Fortners did not at that time submit evidence that they served the Board of County Commissioners, the County Attorney's Office, and an individual County Commissioner. Nor did Mr. Fortner mention in his deposition on April 15, 2008, that he had served the office of the Board of County Commissioners, the County Attorney's Office, and an individual County Commissioner.

On January 15, 2012, the Fortners finally and belatedly submitted evidence of service on the County Attorney's Office [Doc. #350, pp. 15-17]. The evidence consists of an affidavit by Mr. Fortner in which he alleges that on March 6, 2006, at 9:15 a.m., he personally delivered a copy of the notice of claim to the County Attorney's Office. He further states that at 10:50 a.m., he witnessed Mr. Ludwig serve a copy of the notice of claim on the Risk Management Department at its office at 105 East Vermijo. Mr. Fortner's affidavit does not state that he delivered a copy of the notice of claim to the Board of County Commissioners or to an individual County Commissioner.[8] The Fortners did not submit evidence of service on the Board of County Commissioners or an individual County Commissioner until the hearing on May 2, 2012.

I find that the Fortners did not file or serve a notice of claim on any County agent, employee, or department regarding the state law tort claims asserted in this action.

---

[8]The affidavit was submitted in response to the defendants' objection [Doc. #343] to my order [Doc. #338] denying the defendants leave to submit a supplemental motion for summary judgment on the issue of CGIA notice.

Consequently, the Fortners failed to comply with the notice requirement of the CGIA, and I lack subject matter jurisdiction to hear the state law tort claims.

IT IS ORDERED:

1.   The plaintiffs' state law tort claims against defendants County of El Paso, Maketa, and Choate are DISMISSED based on sovereign immunity; and

2.   The County of El Paso is DISMISSED as a defendant.

Dated May 30, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge