IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02148-BNB-MEH

DARRELL FORTNER, and
JENNIFER FORTNER, d/b/a Diamond/Dundee Tree Service,

Plaintiffs,

v.

KATHY YOUNG, individually and in her official capacity as City Clerk of C/S,
DARREL PEARSON, individually and in his official capacity as City Forrester of C/S,
JAMES A. CHOATE, in his individual capacity as Sergeant for El Paso County Sheriff's Office,
TERRY MAKETA, in his individual capacity as Sheriff of El Paso County, Colorado, and
JAMES E. MCGANNON, individually and in his official capacity as City Forrester for the City of Colorado Springs, CO,

Defendants.

_____

## ORDER
_____

This matter arises on the **County Defendants' Motion to Enforce Settlement Agreement** [Doc. #518, filed 12/12/2012] (the "Motion to Enforce"), brought by defendants Choate and Maketa. The Motion is GRANTED.

## BACKGROUND

The plaintiffs, Darrell and Jennifer Fortner, filed their initial Complaint in October 2006. They have proceeded *pro se* throughout much of the case. The remaining claims are against employees of El Paso County and the City of Colorado Springs. The case has been contentious and protracted, with a total of 539 docket entries to date.

On October 3, 2012, attorney Erhard Fitzsimmons entered his appearance on behalf of the plaintiffs [Doc. #503]. On October 10, 2012, I set the case for trial to begin on January 7,

2013 [Doc. #508]. On December 11, 2012, Mr. Fitzsimmons filed an Unopposed Motion to Withdraw as Attorney of Record [Doc. #516]. The motion states:

> Plaintiffs have requested that Erhard Fitzsimmons, PC withdraw from this matter and plaintiffs wish to continue pro se. Plaintiffs had authorized Erhard Fitzsimmons, PC to take certain actions on their behalf and have now withdrawn such authority. This includes settlement authority; therefore, Erhard Fitzsimmons, PC will be unable to continue representation of the plaintiffs. A conflict of interest has arisen which prevents Erhard Fitzsimmons, PC from providing effective representation to plaintiffs.

Id. at ¶ 2.

On December 12, 2012, defendants Choate and Maketa (the "County Defendants") filed the Motion to Enforce Settlement stating that (1) on or about November 28, 2012, Mr. Fitzsimmons contacted the County Defendants' attorney, Amy Folsom, and represented that he "had the authority" to settle all claims against the County for $9,900; (2) Mr. Fitzsimmons contacted Ms. Folsom the next business day and represented that the plaintiffs were "threatening" to withdraw from the settlement agreement; (3) the County Defendants sent a draft of the proposed Settlement Agreement and a copy of the check to Mr. Fitzsimmons; (4) on December 4, 2012, Mr. Fitzsimmons informed Ms. Folsom that the Fortners were prepared to proceed with the agreement as tendered; (5) on December 7, 2012, Mr. Fitzsimmons stated that execution of the written agreement was anticipated that day; and (6) on December 10, 2012, Mr. Fitzsimmons left a telephone message for Ms. Folsom stating that the Fortners were again planning to "back out" of the agreement and that he was preparing to withdraw from representation. *Motion to Enforce*, p. 2, ¶ 5.

On December 17, 2012, I permitted Mr. Fitzsimmons to withdraw from representation of the plaintiffs [Doc. #521]. In addition, I vacated the trial and set the Motion to Enforce for a hearing.

On December 17, 2012, the plaintiffs filed a pro se response to the Motion to Enforce [Doc. #522] arguing that the Settlement Agreement should not be enforced because (1) the County Defendants had attached "altered/falsified" exhibits to a motion filed in October 2012; (2) the County Defendants altered an order of the El Paso County District Court which states that Mr. Fortner is not required to register as a sex offender; and (3) in September 2008, the County Defendants used a "false" exhibit in their Motion for Summary Judgment. The Fortners also argued that they never agreed to settle with the County Defendants.

I conducted an evidentiary hearing on the Motion to Enforce on January 7, 2013.

## LEGAL STANDARD

A settlement agreement is a contract between the parties. Citywide Bank of Denver v. Herman, 978 F. Supp. 966, 977 (D. Colo. 1997). The law favors compromise and settlement, and settlements will be enforced by the court. Id.; City and County of Denver v. Adolph Coors Co., 813 F. Supp. 1476, 1479 (D. Colo. 1993). A trial court has the power, while a case is pending before it, summarily to enforce the settlement of the parties. United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993).

The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). Normally, the construction of a contract is a question of law for the court. Florom v. Elliott Mfg., 867 F.2d 570, 575 (10th Cir. 1989). "Unless the words used by the parties to

express their agreement are found to be ambiguous in some material respect, the court should give them legal effect according to their plain, ordinary and popular meaning." Id.

Where, as here, there are disputed issues of material fact concerning the existence or terms of a settlement agreement, the court must hold an evidentiary hearing in order to resolve the disputed issues of fact. Hardage, 982 F.2d at 1496.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On November 26, 2012, Ms. Folsom contacted Mr. Fitzsimmons to initiate settlement negotiations on behalf of the County Defendants. *Transcript of Proceedings* (the "Transcript") at 8:6-10.

2. Mr. Fitzsimmons discussed with Mr. Fortner the County Defendants' interest in settling the case. Subsequently, Mr. Fitzsimmons told Ms. Folsom that the Fortners would accept $25,000.00 in return for dismissal of the case. Id. at 56:8-12; 56:25-57:5.

3. Ms. Folsom, on behalf of the County Defendants, offered to settle for $6,000.00 in exchange for dismissal of the case. Mr. Fitzsimmons stated that he would relay the offer to the Fortners. Id. at 9:3-7; 57:6-10.

4. Approximately one day later, Mr. Fitzsimmons called Ms. Folsom and made a counter-offer of $15,000.00 on behalf of both Mr. and Mrs. Fortner. Id. at 9:25-10:7; 57: 6-13.

5. Ms. Folsom responded with a $7,000.00 offer. Id. at 10:13-15.

6. Mr. Fitzsimmons indicated that he would relay the offer to the Fortners. Subsequently, he called Ms. Folsom and made a counter-offer of $12,000.00. Id. at 10:15-17; 57:6-13.

7. On Thursday, November 29, 2012, Ms. Folsom extended an offer on behalf of the County Defendants to pay the Fortners $9,900.00 in exchange for dismissal of the case. She explained to Mr. Fitzsimmons that she had signature authority for that amount and that any greater amount would have to be processed through the County Claims Committee. Id. at 11:4-20; 57:14-19. Ms. Folsom told Mr. Fitzsimmons that she could have a check for $9,900.00 available by December 4, 2012. Id. at 11:12-13; 58:10-14.

8. On Friday, November 30, 2012, Mr. Fitzsimmons left Ms. Folsom a voice mail stating that he had authority to settle for $9,900 in exchange for dismissal of the claims against the County Defendants in this action. In addition, the agreement was subject to Mr. Fortner's review of the written agreement to assure that it released only those claims. Mr. Fitzsimmons had actual authority from his clients to settle on these terms. Id. at 58:10-62:3; 64:3-13; 68:1-13; 75:25-76:7.

9. Ms. Folsom directed her staff to draft a settlement agreement which reflected the settlement terms. She also directed her staff to order a check from the county finance office on an expedited basis so that it would be available on December 4, 2012. Id. at 13:1-7.

10. On December 4, 2012, Mr. Fitzsimmons phoned Ms. Folsom and indicated that Mr. Fortner was considering backing out of the agreement. Id. at 13:17-23; 65:1-13. Mr. Fitzsimmons stated that he would meet with the Fortners later that afternoon and hoped to address their concerns then. Id. at 13:24-14:2.

11. Ms. Folsom emailed a copy of the draft agreement and a copy of the check to Mr. Fitzsimmons so that he could have them when he met with the Fortners. Id. at 14:5-12.

12. The draft agreement accurately reflects the terms agreed upon by the parties--payment by the County Defendants to the Fortners of $9,900.00 in return for the Fortners' dismissal of the claims asserted against the County Defendants in this action. *County Defendants' Exhibit B*.

13. Mr. Fitzsimmons called Ms. Folsom on December 4, 2012, after his meeting with the Fortners. He indicated that the Fortners were going forward with the settlement. He did not indicate that the Fortners were requesting any modification to the agreement. *Transcript*, 20:15-22.

14. When Ms. Folsom did not receive executed copies of the agreement the next day, she asked her paralegal, Casey Campbell, to email Mr. Fitzsimmons and inquire whether anything else was needed. Id. at 21:1-7. Ms. Campbell emailed Mr. Fitzsimmons on December 5, 2012, stating: "I was checking in to see if there is anything else you need from us regarding the settlement. Please let me know." On Friday, December 7, 2012, Mr. Fitzsimmons replied: "I just wanted to let you know that I am waiting for Mr. Fortner to return the Release today. He is on a job today and out of cell phone range, but once I am able to speak with him, I will let you know." Id. at 21:8-9; County Defendants' Ex. C.

15. On December 10, 2012, Ms. Folsom received a telephone message from Mr. Fitzsimmons which indicated that the Fortners intended to back out of the agreement. Mr. Fitzsimmons acknowledged that Mr. Fortner had agreed to settle the case but had changed his mind. *Transcript*, 22:1-11; 66:8-14; 85:14-18. Mr. Fitzsimmons also stated that he was going to file a motion to withdraw from representation of the Fortners.

16. Under Colorado law, a settlement agreement need not be written to be enforced, Citywide Bank of Denver, 978 F. Supp. at 977 (applying Colorado law); DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248 (Colo. App. 2001), but its terms must be clear, unambiguous, and capable of enforcement. Adolph Coors, 813 F. Supp. at 1479. The Colorado Supreme Court stated the law applicable to the determination of the existence of an enforceable agreement in I.M.A., Inc. v. Rocky Mountain Airways, Inc., 713 P.2d 882, 888 (Colo. 1986):

> In order to establish the existence of a contract, the evidence must show that the parties agreed upon all essential terms. The parties' agreement is evidenced by their manifestations of mutual assent. Furthermore, evidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible to clarify the intent and purpose of the parties.

(Internal citations omitted.)

17. The evidence establishes that the County Defendants and the Fortners formed an oral contract consisting of three clear, unambiguous terms: (1) the County Defendants payment of $9,900.00 to the Fortners; (2) in return for the Fortners' dismissal of the claims against the County Defendants as asserted in this action; (3) subject to Mr. Fortner's review of the written agreement to assure that it released only those claims.

18. The fact that the Fortners never signed a written agreement does not foreclose a finding that they entered into an enforceable contract:

> The mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force.

Id. (internal citations omitted).

19. The County Defendants procured a check to the Fortners for $9,900.00. The written agreement released only the claims against the County Defendants that are asserted in this action. Therefore, the Fortners' refusal to execute the written agreement was unreasonable and contrary to the terms of the oral contract.[1]

20. The Fortners argue that the County Defendants fraudulently induced them to enter into the contract. "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Restatement (Second) of Contracts § 164(1) (1981). The Fortners did not present any competent evidence that the County Defendants made fraudulent or material misrepresentations which induced them to enter into the contract. The Fortners' allegations of fraud are unsupported by the record, and their accusation of fraud in the inducement is frivolous.

21. Mr. Fortner also argues that he refused to sign the agreement because he believed the County Defendants offered $99,000.00, not $9,900.00. *Transcript* 142:24-145:5. He testified:

> When Mr. Fitzsimmons got back from Texas I talked to him about the -- I thought $99,900 and he said oh, no, it was $9,900 and I related that to Jenny and we both just cried in each other's arms . . . .

---

[1] Mr. Fitzsimmons testified that he and Mr. Fortner had a different understanding of the remaining claims against the County Defendants and that Mr. Fortner's view of his claims somehow hindered Mr. Fortner's acceptance of the terms of the written agreement. Id. at 60:17-63:21. This position is untenable. The Fortners' remaining claims against the County Defendants have been stated with clarity in several orders of this court, including the Pretrial Order [Docs. ##116, 306; 387; 508]. Mr. Fortner's misunderstanding of his claims is unreasonable.

*Transcript*, 151:21-24. Mr. Fortner also testified that he had only one settlement discussion with Mr. Fitzsimmons, "[a]nd I thought he said $99,900." Id. at 143:19-24. He stated that he never talked to Mr. Fitzsimmons about settling for $25,000.00; $15,000.00; and $12,000.00. Id. at 143:15-18.

However, Mrs. Fortner testified that she understood the proposed dollar amount to be $9,900.00, not $99,000.00. 128:16-21; 129:9-14. Mr. Fitzsimmons testified that the Fortners authorized him to settle for $25,000.00; $15,000.00; and $12,000.00; and he never told Mr. Fortner that the County offered $99,000.00. Id. at 85:25-86-8. Indeed, he expressed doubt that Mr. Fortner could have misunderstood the dollar amount to be $99,000.00 instead of $9,900.00. Id. at 72:6-13. I find Mr. Fortner's testimony incredible in light of the testimony of Mrs. Fortner and Mr. Fitzsimmons.

22. The Fortners also argue that the settlement agreement is void because Mr. Fitzsimmons did not discuss the settlement negotiations with Mrs. Fortner. The argument is unconvincing. Mr. Fitzsimmons testified that it was his understanding that Mr. Fortner controlled the litigation and that "virtually all" of his contact was with Mr. Fortner. *Transcript*, 78:18-79:10. Moreover, Mrs. Fortner admitted that Mr. Fortner speaks on her behalf in this litigation and that if he wanted to settle the case she would go along with whatever he wanted. 121:23-122:18; 123:16-18; 131:10-14. Indeed, Mr. Fortner has acted as the spokesperson for the plaintiffs at every proceeding in my courtroom.

23. In short, it appears that the Fortners simply changed their minds about settling the case. A party who knowingly and voluntarily authorizes the settlement of his claims cannot

avoid the terms of the settlement simply because he has changed his mind. Woods v. Denver Dept. of Revenue, 45 F.3d 377, 378 (10th Cir. 1995).

## CONCLUSION

A clear, unambiguous, and enforceable settlement agreement was reached between the Fortners and the County Defendants. There was no fraudulent inducement or mutual mistake of fact in connection with the agreement.

IT IS ORDERED:

(1) The County Defendants' Motion to Enforce Settlement Agreement [Doc. #518] is GRANTED;

(2) The settlement agreement of the parties as evidenced by the General Release and Agreement (County Defendants' Exhibit B) (attached hereto) shall be enforced as an order of the court;

(3) The County Defendants shall tender payment of the settlement proceeds to the Fortners on or before March 18, 2013; and

(3) Defendants James Choate and Terry Maketa are DISMISSED from this action pursuant to the General Release and Agreement.

Dated March 4, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge