IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02148-BNB-MEH

DARRELL FORTNER, and
JENNIFER FORTNER, d/b/a Diamond/Dundee Tree Service,

Plaintiffs,

v.

KATHY YOUNG, individually as City Clerk of C/S,
DARREL PEARSON, individually as City Forrester of C/S, and
JAMES E. MCGANNON, individually as City Forrester for the City of Colorado Springs, CO,

Defendants.

_____

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
_____

This case is brought by the plaintiffs, Darrell and Jennifer Fortner, against the Colorado

Springs City Clerk, Kathy Young, and two Colorado Springs Foresters, Darrel Pearson and

James McGannon.  This court has subject matter jurisdiction under 28 U.S.C. § 1331.  Venue is

proper under 28 U.S.C. § 1391(b) because the parties reside in the State of Colorado and the

events giving rise to the claims occurred here.

The Fortners initiated this case on October 26, 2006.  The allegations of the initial

complaint and all subsequent amended complaints are prolix and confusing, making the

Fortners' claims (and the facts underlying the claims) extremely difficult to discern.  After

numerous dispositive motions, amendments to the Complaint, and attempted amendments to the

Complaint, the plaintiffs' remaining claims against defendants Young, Pearson, and McGannon

were painstakingly defined at a pretrial conference on July 17, 2012.

The remaining claims, brought pursuant to 42 U.S.C. § 1983, are as follows: (1) defendant Young denied renewal of the plaintiffs' tree service business license in violation of the plaintiffs' procedural due process rights; (2) defendants Pearson and McGannon caused Mr. Fortner to be arrested seven times in violation of his Fourth Amendment rights; and (3) defendants Pearson and McGannon caused Mr. Fortner to be maliciously prosecuted on one of the seven charges.  A Pretrial Order was entered on October 10, 2012 [Doc. #508], and the case was tried to the court on June 10 and 11, 2013.  Based on the evidence received at trial, I conclude that the Fortners' constitutional rights were not violated.  Judgment shall enter in favor of the defendants on all claims against them.

### 1.  Due Process Claim Against Young

The Fortners claim that at a City Council hearing in 1998, a decision was made not to renew Mr. Fortner's tree service business license even though the City of Colorado Springs knew in advance that Mr. Fortner's lawyer would not be present at the hearing.  *Amended Final Pretrial Order* [Doc. #508], p. 2.  The Fortners further claim that Mr. Fortner filed a lawsuit in the district court in El Paso County, but the lawsuit was dismissed; he filed an appeal, and the court of appeals found that the Fortners' due process rights had been violated at the hearing; the matter was remanded for another hearing; a second hearing was held and again the Fortners' attorney was ill and could not attend; the Fortners' application for renewal of their tree service license again was denied; Mr. Fortner was not given an opportunity to speak at the second hearing; and the refusal to allow Mr. Fortner to speak violated of his due process rights.  Id.

A license to practice one's profession is a protected property right.  Therefore, "the revocation or removal of a license or certificate that is essential in the pursuit of a livelihood

requires procedural due process under the Fourteenth Amendment." <u>Stidham v. Peace Officer Standards and Training</u>, 265 F.3d 1144, 1150 (10th Cir. 2001) (internal quotations and citation omitted). However, an official cannot be held liable in a section 1983 action unless the official caused or participated in the alleged constitutional violation. <u>McKee v. Heggy</u>, 703 F.2d 479, 483 (10th Cir. 1983).

The series of events leading to the 1998 hearing are lengthy and convoluted. In order to fully understand the events, I allowed testimony and evidence regarding the direct history leading up to the hearing. Based on that testimony and evidence, I set forth the following background:

1. On December 31, 1996, the Fortners submitted a Renewal Application for the renewal of Dundee Tree Service's business license for the year of 1997. The Renewal Application states that the "Licensee is a Sole Proprietor," but it names as licensees both Mr. and Mrs. Fortner. *Trial Transcripts* [Docs. ## 583 and 584] ("Tr."), 254:14-256:20; 260:7-11; *Defendants' Exhibit* ("Def. Ex.") A-3.

2. On January 21, 1997, Ms. Young sent to the Fortners a letter requesting that additional information be provided before the Renewal Application could be processed. Ms. Young stated that the Fortners had failed to supply dates and reasons for previous suspensions/revocations of their license and had failed to include a certificate of worker's compensation. *Tr.* 256:21-258:16; *Def. Ex.* A-4.

3. On March 7, 1997, Ms. Young sent the Fortners a letter denying their 1997 Renewal Application, effective March 7, 1997. *Tr.* 263:11-264:1; *Def. Exs.* A-6.1 through A-6.6. She stated the following reasons: (1) the Renewal Application misrepresented the licensees' status as

3

a sole proprietor; (2) the Fortners failed to maintain proper general insurance for Dundee Tree Service as required by the city code; (3) the Fortners failed to submit proof of worker's compensation insurance coverage as required by the city code; (4) the Fortners failed to fully answer the Renewal Application's questions regarding past arrests and crimes; (5) the Fortners conducted business under a suspended license in 1995; (6) the Fortners had a long and documented history of license problems and citizen complaints; and (7) the Fortners' behavior was designed to circumvent the licensing ordinances and the authority of the Licensing Officer and City Council to enforce the ordinances. *Tr.* 268:6-275:25; *Def. Exs.* A-6.1 through A-6.6.

4.   Mr. Fortner appealed Ms. Young's denial of his 1997 Renewal Application to the Colorado Springs City Council. *Tr.* 278:16-23. The appeal was originally scheduled to be heard on April 8, 1997. *Tr.* 278:24-279:1. It was continued to May 27, 1997. *Tr.* 283:13-18.

5.   At the May 27, 1997, City Council meeting, the City Attorney requested a postponement of the appeal due to the illness of the Fortners' attorney. A council member moved to postpone the appeal, but the motion failed. The City Council subsequently unanimously voted to uphold the denial of the Fortners' Renewal Application. *Tr.* 283:16-284:4.

6.   On May 28, 1997, the Deputy City Clerk sent a letter to the Fortners informing them that their appeal had been denied. *Tr.* 284:8-13; *Def. Ex.* A-7.

7.   The Fortners appealed the City Council's denial of their request for a continuance to the El Paso District Court. The district court found that the City Council had violated the Fortners' due process rights by not granting their request for a continuance of the May 27, 1997, hearing based on their lawyer's illness. The court remanded the case to the City Council for a hearing. <u>Fortner v. Cousar</u>, 992 P.2d 697, 698 (Colo. App. 1999); *Tr.* 286:1-21.

8.   The Deputy City Clerk sent to the Fortners a letter dated April 1, 1998, informing them that "[p]er the Judge's ruling, the renewal of Dundee Tree Services license was remanded back to the City Council and will be heard at its meeting of April 14, 1998." The letter further stated that "[y]our presence at this meeting is required.  If for some reason out of your control you are unable to attend this meeting you must notify this office immediately." *Tr.* 285:18-286:21; *Def. Ex.* A-8.

9.   The April 14, 1998 hearing was continued to April 28, 1998. *Tr.* 287:1-6.   The Fortners were sent a notice of the continuance in a letter dated April 10, 1998. *Tr.* 287:1–20; *Def. Ex.* A-11.

10.   The April 28, 1998 hearing was continued to May 26, 1998. *Tr.* 291:11-13.   The Fortners were not represented by counsel at this time, and they did not attend the hearing.  The City Council decided to go forward with the hearing.[1] *Tr.* 292:16-293:7; 386:10-18; 402:12-403:2.

Based on all of the testimony and evidence, I find the following facts and conclusions of law as they relate to the Fortners' due process claim against Ms. Young:

1.   When the denial of a business license is appealed to the City Council, Ms. Young's role in the appeal process is to assure that the item is placed on the City Council's agenda in the applicable time frame.  In addition, if there is a timely request for continuation, she notifies the City Council of the request. *Tr.* 279:5-25.

---

[1]The minutes of the hearing and the letter denying the Fortners' license renewal were admitted into evidence. *Def. Exs.* A-9.1 through A-9.3 and A-12.

5

2.   Ms. Young does not have any role in the actual decision process once the appeal goes to the City Council.  *Tr.* 280:1-3.

3.   Ms. Young's role in the hearing at issue here was simply to place it on the City Council's agenda.  She did not attend the hearing nor did she participate in any of the decisions made at the hearing.[2]  *Tr.* 291:14-292:15.

4.   Because Ms. Young did not participate in the decision to go forward with the hearing on May 26, 1998, she cannot be held liable for any alleged violation of the Fortners' procedural due process rights.  McKee, 703 F.2d at 483.

### 2.   Fourth Amendment Claim Against Pearson and McGannon

The Fortners claim that on seven separate occasions Mr. Fortner was detained by police officers and given a ticket for working without a tree service license; he was taken to jail by police officers twice based on Pearson and McGannon's complaints and on one occasion was told to follow the officer in his car to the jail; on four other instances, Mr. Fortner was detained for an hour and a half or longer to receive the ticket; the charges in all seven instances were dismissed or Mr. Fortner was found not guilty; and if defendants Pearson and McGannon had reasonably investigated the situation, they would have known that Mr. Fortner was not in violation of any rules because he was not cutting trees or was cutting them for free.  *Amended Final Pretrial Order* [Doc. #508], p.4.  The Fortners state that the charges were dismissed on the following dates: (1) January 13, 1998; (2) June 3, 1998; (3) January 5, 1999; (4) March 29, 1999;

---

[2]Mr. Fortner's testimony regarding Ms. Young's role in the May 26, 1998 hearing was conclusory, and I find it incredible.  *Tr.* 378:10-381:11; 386:7-388:15.

(5) September 23, 1999; (6) August 21, 2000; and (7) October 4, 2000.  Id. at p. 3.[3]  The

plaintiffs introduced evidence to show that the dates of the arrests are (respectively): (1) June 27,

1997; (2) November 20, 1997; (3) June 11, 1998; (4) January 5, 1999; (5) September 2, 1999; (6)

May 19, 2000; and (7) August 2, 2000.  Plaintiffs' Exhibits ("Pl. Exs.") 10.2; 10.3; 10.6; 10.7;

10.8; 10.9; and 10.10.

"The Fourth Amendment, made applicable to the States by way of the Fourteenth

Amendment, guarantees the right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures."  Minnesota v. Dickerson, 508 U.S. 366, 372

(1993) (internal quotations and citation omitted).  "It is quite plain that the Fourth Amendment

governs 'seizures' of the person which do not eventuate in a trip to the station house and

prosecution for crime--'arrests' in traditional terminology.  It must be recognized that whenever

a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that

person."  Terry v. Ohio, 392 U.S. 1, 16 (1968).

Arrests even for minor offenses must be based on probable cause to believe that the

suspect has committed or is committing an offense.  Atwater v. City of Lago Vista, 532 U.S.

---

[3]The Fortners have brought several law suits in both state and federal court regarding
harassment by employees of the City of Colorado Springs.  This court has found that the
following claims are barred by res judicata [Docs. ## 307 and 353]:
      1.  The claim against defendant Pearson for allegedly striking Mr. Fortner in the head in
September 1996;
      2.  All claims against the City of Colorado Springs and/or its employees which are based
on actions from May 1994 until October 1996 for harassment, unlawful arrest of Mr. Fortner,
conspiracy to run the plaintiffs out of the tree business, suspension of the plaintiffs' tree business
license, and failure to properly supervise and train with regard to these actions; and
      3.  All claims based on defendants' actions in ignoring the plaintiffs' valid tree service
license in 1996; arresting the plaintiffs in 1996; bringing criminal cases against Mr. Fortner in
September and November 1996; failing to renew the plaintiffs' tree service license in 1997; and
failing to properly supervise city employees with regard to these actions.

318, 351 (2008).  "Probable cause to arrest exists only when the facts and circumstances within

the officers' knowledge, and of which they have reasonably trustworthy information, are

sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has

been or is being committed."  Cortez v. McCauley, 478 F.3d 1108, 1116 (10th Cir. 2007).  The

Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.'

" Ohio v. Robinette, 519 U.S. 33, 39 (1996) (quoting Florida v. Jimeno, 500 U.S. 248, 250

(1991)).

      Our circuit court has stated:

> It is a violation of the Fourth Amendment for an arrest warrant
> affiant to knowingly, or with reckless disregard for the truth,
> include false statements in the affidavit.  Similarly, it is a Fourth
> Amendment violation to knowingly or recklessly omit from the
> affidavit information which, if included, would have vitiated
> probable cause.  If an arrest warrant affidavit contains false
> statements, the existence of probable cause is determined by
> setting aside the false information and reviewing the remaining
> contents of the affidavit.  Where information has been omitted
> from an affidavit, we determine the existence of probable cause by
> examining the affidavit as if the omitted information had been
> included and inquiring if the affidavit would still have given rise to
> probable cause for the warrant.

Taylor v. Meacham, 82 F.3d 1556, 1562 (10th Cir. 1996) (affidavit prepared by sheriff).

      Relying heavily on Taylor, the circuit court later held that a police forensic analyst--who

neither initiated nor filed the charges against the plaintiff--could be sued for malicious

prosecution where the plaintiff alleged that she withheld exculpatory evidence and fabricated

inculpatory evidence.  Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004).

      The court looked to the language of section 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, **or causes**

> **to be subjected**, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).

The court stated that "[t]his suggests that Congress was concerned not just with the officer who formally initiates the process that leads to an unconstitutional seizure, but to all those who were the 'cause' of deprivations of constitutional rights." Pierce, 359 F.3d at 1292.

The court also stated:

> Accordingly, Ms. Gilchrist cannot "hide behind" the fact that she
> neither initiated nor filed the charges against Mr. Pierce. The
> actions of a police forensic analyst who prevaricates and distorts
> evidence to convince the prosecuting authorities to press charges is
> no less reprehensible than an officer who, through false statements,
> prevails upon a magistrate to issue a warrant. In each case the
> government official maliciously abuses a position of trust to induce
> the criminal justice system to confine and then to prosecute an
> innocent defendant. We view both types of conduct as equally
> repugnant to the Constitution.

Id. at 1293.

Thus, under Taylor and Pierce, Pearson and McGannon could be liable under the Fourth Amendment if the Fortners prove that they knowingly, or with reckless disregard for the truth, fabricated evidence to support probable cause or withheld evidence that would have vitiated probable cause.[4]

---

[4]Even so, if the evidence shows that the police officers had sufficient information on which to base probable cause regardless of Pearson and McGannon's omissions or false information, then Pearson and McGannon's misconduct "was not of constitutional significance and is not actionable under § 1983." Grubbs v. Bailes,, 445 F.3d 1275, 1278 (10th Cir. 2006).

Mr. Fortner examined three witnesses in support of this claim: Phillip Ludwig and brothers Matthew and Roy Niccoli.[5]  Mr. Fortner's questions to Mr. Ludwig the Niccoli brothers were leading.  Their responsive testimony was vague and conclusory and, at times, contradictory.[6]  Moreover, although they testified that Pearson and McGannon appeared at their job sites on various occasions and made them stop working until the police came and arrested Mr. Fortner, there was no evidence or specific factual testimony to show that it was Pearson's and/or McGannon's false statements that caused Mr. Fortner to be arrested.  I find the testimonies of Phillip Ludwig, Matthew Niccoli, and Roy Niccoli to be incredible.

Mr. Fortner also testified in support of this claim.  Like his witnesses, Mr. Fortner's testimony lacked specific factual detail regarding Pearson's and/or McGannon's involvement in causing his arrests.  Relying on hearsay, he testified that a policeman told him on one occasion that the "City Forester" directed him to write Mr. Fortner a ticket.  *Tr.* 391:25-392:4.  Mr. Fortner also stated that Pearson and McGannon "together came out to the job site and wrote information, turned it in to the police, they arrested me for that."  *Tr.* 392:13-15.  I find Mr. Fortner's testimony to be incredible.

-------

[5]Mrs. Fortner also testified, but she did not remember seeing Pearson or McGannon at the job sites. *Tr.* 118:5-11.

[6]For example, in response to Mr. Fortner's questions, Mr. Ludwig testified that Pearson and McGannon came to the job site  on September 2, 1999; they introduced themselves as City Forestry Officers; told the workers to stop work; and said that "they had the police on the way." *Tr.* 11:18-25; 19:1-4.  He further testified that the police came, and Mr. Fortner was arrested and taken away. *Tr.* 12:15-21; 14:16-15:3; 19:1-4; *Pl. Ex.* 10.8.  Mr. Ludwig relied on Plaintiff's Exhibit 10.8, which is a Colorado Springs Police Department record pertaining to Mr. Fortner's arrest on September 2, 1999.  *Tr.* 37:18-38:13.  On cross-examination, defense counsel indicated the exhibit showed that--although Mr. Fortner was arrested on September 2, 1999--the date of the underlying action that led to the arrest was July 10, 1998.  Mr. Ludwig then admitted that Exhibit 10.8 could not support his testimony.  *Tr.* 37:18-39:14.

Mr. Pearson and Mr. McGannon also testified regarding this claim.  I find their testimony to be credible.  Based on their testimony and the evidence presented, I find the following facts:

1.   The Clerk's Office for the City of Colorado Springs administers all business licenses, including tree service business licenses.  *Tr.* 165:17-20.  The City Forester's Office does not administer business licenses.  *Tr.* 172:20-24.

2.   The City Forester's Office administers tests for tree business licenses after the application and fees are submitted to the Clerk's Office.  Mr. Pearson administered the tests from 1994 to 2009.  *Tr.* 165:25-166:5; 169:24-170:15; 184:15-185:15; 202:5-22.

3.   On September 16, 1996, Mr. Pearson noticed Mr. Fortner working on a location in the city cutting 35 to 40 foot trees located between two houses.  He called the Clerk's office to verify whether Mr. Fortner had a license.  The Clerk's Office informed him that Mr. Fortner did not have a license.  Mr. Pearson called the police.  *Tr.* 174:22-175:15.  Nobody else was with Mr. Pearson.  *Tr.* 178:17-24.

4.  After September 16, 1996, Mr. Pearson did not have any contact with Mr. Fortner.  *Tr.* 177:8-14; 179:24-181:12.

5.  After September 16, 1996, if the City Forester's Office received a complaint about Mr. Fortner's business conducting unlicensed tree services, Mr. Pearson would call the Business Licenses Enforcement Officers for the City of Colorado Springs.  *Tr.* 173:16-174:21.

6.  Mr. Pearson did not come to the Fortners' job site from 1997 through 2001.  *Tr.* 167:18-24.  During this time, he did not contact Mr. Fortner or report any of Mr. Fortner's activities to anyone.  *Tr.* 181:18-24.  Nor did he have any involvement with the tickets and arrests Mr. Fortner received during this time.  *Tr.* 181:18-182:1.

7.   The only time Mr. McGannon visited the Fortners' job site was once in the early 1990s. *Tr.* 211:18-5.

8.   On April 25, 2001, Officer D. Smook of the Colorado Springs Police Department authored a report stating that Mr. McGannon called the Colorado Springs Police Department and stated that he had been notified by an anonymous caller that Dundee Tree Service was cutting down a tree within city limits. *Tr.* 208:2-210:17; *Pl. Ex.* 10.13.

Based on these facts, neither Mr. Pearson nor Mr. McGannon caused Mr. Fortner to be arrested in violation of his Fourth Amendment rights on (1) June 27, 1997; (2) November 20, 1997; (3) June 11, 1998; (4) January 5, 1999; (5) September 2, 1999; (6) May 19, 2000; or (7) August 2, 2000.

### 3.   Malicious Prosecution Claim Against Pearson and McGannon

The Fortners claim that Mr. Fortner was maliciously prosecuted on one of the seven charges, and he was found not guilty.  They further claim that defendants Pearson and McGannon did not have probable cause to have him arrested or prosecuted; their actions were willful and wanton; and, as a result, the plaintiffs suffered loss of income and emotional injuries. *Amended Final Pretrial Order* [Doc. #508], p. 5.

"[A] § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008).  A plaintiff's claim "to be

free from prosecution except on the basis of probable cause" is governed by the Fourth Amendment.  <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).

As discussed above, defendants Pearson and McGannon were not involved in the arrests at issue in this case.  Therefore, they cannot be held liable on the malicious prosecution claim.

IT IS ORDERED:

(1)     Judgment shall enter in favor of the defendants, Kathryn Young, Darrell Pearson, and James McGannon, on all claims asserted them, and against the plaintiffs, Darrell Fortner and Jennifer Fortner; and

(2)     The defendants may be awarded their costs on the filing of a bill of costs pursuant to D.C.COLO.LCivR 54.1.

Dated August 20, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

13